IGOE BROTHERS, A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. NATIONAL SURETY COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Submitted October 27, 1933—Decided January 5, 1934.

For the plaintiff-respondent, *Milton M. Unger.*

For the defendant-appellant, *Williams & Leonard.*

The opinion of the court was delivered by

PERSKIE, J.   Appellant seeks to review an order and rule, each dated November 19th, 1932, made by the late Chief Justice Gummere during the progress of the cause.   The order denied appellant's motion to dismiss the respondent's cause

of action, summons in which was tested September 24th, 1932; and the rule permitted the respondent to consolidate its two causes of action against the appellant. The rule of consolidation provided that the allegations of the first cause should be known as "First Count" of the consolidated action and the allegations of the second cause should be known as "Second Count" thereof. Appellant also seeks to review the final judgment entered in favor of the respondent, after trial before Circuit Court Judge Smith, sitting without a jury.

The trial disclosed the following facts: On September 23d, 1930, Maggi & Schoonover entered into a contract with the New Jersey state highway commission for the furnishing of labor and materials to complete the undertaking described in the contract as "Passaic river bridge and approaches, Paterson to East Paterson, New Jersey, in section 7 of route 4 of the state highway system of New Jersey." Pursuant to chapter 75 (*Pamph. L.* 1918, *p.* 203), the contractor furnished a bond with the appellant as surety thereon. It is in the usual statutory form. The respondent sold Maggi & Schoonover structural steel, which was actually incorporated in the undertaking contemplated by the contract, and upon which the admitted balance of $7,000 was due.

On January 11th, 1932, after the engineer in charge had reported that the undertaking was completed, the state highway commission adopted a resolution whereby "it approved acceptance of the contract with Maggi & Schoonover * * * and authorized final payment therein when in order." Respondent informed of that resolution, served a statement of its claim on the surety, on March 26th, 1932, and on April 12th, 1932, instituted suit. On February 2d, 1932, the state highway commission passed a resolution rescinding its action of January 11th, 1932, and instead thereof approved "of the acceptance of the completed work on this contract of the making of semi-final payment thereof less than one hundred and twenty-five per cent. of the value of the uncompleted work which cannot be performed until spring." It appeared that some seeding, &c., that had not been done and could not be done until spring, necessitated the foregoing action on the

part of the state highway commission. Thereafter, on July 5th, 1932, the state highway commission again adopted a resolution and "approved of final acceptance of the completed work * * * and authorized the making of final payment thereon when the necessary formalities have been observed." A dilemma faced the respondent. It was in a quandary. What was the actual date of acceptance? Unwilling, and properly so, to subject itself to the consequences of the uncertainty thus created, through no act or fault of its own, its counsel served the surety a second statement of its claim on August 2d, 1932, and brought a second suit against the appellant on September 24th, 1932. Appellant filed an affidavit of merits to this second suit and thereafter noticed respondent on a motion to dismiss the second cause on the ground of the pendency of the first cause of action—for the same cause and between the same parties. Respondent countered with a motion for a consolidation of the two suits with the results already indicated. Was the consolidation of the two suits erroneous? We think not.

As we understand the contention of the appellant, it is that there is but a single right upon which respondent could predicate its action, and having sued under appellant's bond, in the first suit, it could not, during the pendency of that suit, bring another action upon the same bond, based on the same subject. Appellant summarizes its contention on this point as follows:

"If a prior action on the same bond for the same claim, as between the same parties, is not a bar to the second action, then by the same token a litigant in doubt of the date of acceptance might well bring fifty actions in the trembling hope that one of them might contain the proper date of acceptance. The common law system did not tolerate such practice."

To this contention we think that it might well be observed that since the right of the respondent to sue is based on the statute (*Warren Brothers Co.* v. *Hartford, &c., Co.,* 102 *N. J. L.* 616 (at *p.* 618); see *Skillman* v. *United States Fidelity, &c., Co.,* 101 *Id.* 511), and the statute makes that right de-

pend upon certain proceedings being taken with reference to the date of acceptance of the work; then if the body, as in this instance, the state highway commission, would pass fifty resolutions of acceptance and forty-nine of revocation it may well be that a claimant would be obliged to go through the formalities of suing on each occasion, otherwise a law suit regarding the subject-matter might well be worthless. It might indeed be purely a matter of chance. Technical rules must yield to practical requirements. Appellant's answer shows a rather evasive tendency, or a lack of knowledge on appellant's part as to when it regarded that the state highway commission had actually accepted the work, for its answer to the first count set out that the contract was accepted on some date other than January 11th, 1932, and its answer to the second count set out that the contract was accepted on some day other than July 5th, 1932, and then when compelled by a demand for particulars to recite on what other day than January 11th it answered July 5th, and when compelled to state on what other date than July 5th it answered January 11th. Appellant, of course, had a right to present inconsistent defenses. The respondent also had the privilege or rights of setting out its cause of action and base it on the two different dates of acceptance. The actual date of acceptance could not be and was not determined until trial. The suits were thus as though they were in the alternative. If respondent had limited its cause of action to one or the other day of acceptance it might well have been caught in the position of the court finally determining that the date of actual acceptance was not the date elected by the respondent. It therefore elected to sue on each date of the alleged acceptance. It was a precautionary act. It proved to be a wise act. The statute was enacted primarily for the protection of the public body and secondarily as an "additional obligation" for the protection of materialmen, &c. *Franklin Lumber Co.* v. *Globe Indemnity Co.*, 102 *Id.* 9; *affirmed, Ibid.* 715. A dismissal of either suit before trial might have resulted in a denial of justice. The learned and discerning late Chief Justice Gummere did the eminently sensible and proper thing in con-

solidating the two suits. He was fortified by precedent. *Den* v. *Kemble,* 9 *Id.* 335; *Metropolitan Casualty Insurance Co.* v. *Lehigh Valley Railroad Co.,* 94 *Id.* 236.

Appellant's second contention is that the trial court should have granted its motion to nonsuit the respondent as to the first suit (first count in the consolidated complaint) and to direct a verdict as to the second suit (second count in the consolidated complaint). We think that this contention is without merit.

Section 3 chapter 75 (*Pamph. L.* 1918, *p.* 203), was amended by chapter 318 (*Pamph. L.* 1931, *p.* 792), and further amended by chapter 142 (*Pamph. L.* 1932, *p.* 254). Under the act of 1918 a materialman could give a statement to the surety within eighty days after the acceptance of the work and could then institute suit after sixty days had expired from the date of such statement. Under the act of 1931, a materialman might give a statement to the surety before the acceptance or eighty days thereafter and that suit might be instituted after the expiration of those eighty days. Under the acts suit had to be brought within one year from the date of acceptance.

It is urged that since the act of 1918 was the law at the time when all the parties in this controversy entered into their respective contracts the laws of 1931 impaired the vested rights of the appellant in the premises. This is not so. *Rader* v. *Southeasterly Road District of Township of Union,* 36 *N. J. L.* 273; *Potts* v. *New Jersey Arms and Ordnance Co.,* 17 *N. J. Eq.* 395. The final responsibility of the surety is not changed. That which is affected is the time when the statement of claim should be furnished to the surety and the time when suit might be instituted. We fail to see how any additional burden, or the impairment of any vested right of the appellant can be spelled out of the act of 1931. This section of the act (*Pamph. L.* 1918, *p.* 203), has received the consideration of this court. In the case of *J. Jacob Shannon & Co.* v. *Continental Casualty Co.,* 106 *N. J. L.* 200, the author of the opinion, Mr. Justice Case, held: "The third section of the act sets up the method of collection. It is pro-

cedural rather than substantive." See *Passinger* v. *Magliaro,* 109 *N. J. Eq.* 381.

Appellant further seeks to avoid liability in the premises on the ground that its liability is limited to the requirements of the statute as it existed at the time of the execution of its bond; that to impose liability upon it by reason of a subsequent statute would be to do so without its consent. That is, it would impose a liability upon it without its choosing. This reasoning is unsound. It is unsound because it ignores the legal effect of such a subsequent statute. It might be construed, as it is in the instant case, to be merely procedural rather than substantive. Appellant is presumed to know the extent of its liability. *E. J. Lavino & Co.* v. *National Surety Co.,* 104 *N. J. L.* 475. With that knowledge, it had the choice of entering into the bond or to refrain from so doing. It chose the former and therefore it logically follows that it willingly assumed the statutory liability.

The trial judge disposed of the question as to which act applied by holding: "I do not think it matters, as the only objection is as to the 1918 act applying the objection there being that as notice was served August 2d, 1932, and suit was brought on September 24th, 1932, sixty days had not elapsed as required by the statute before the commencement of the suit. This defense should have been raised by motion; if it had a timely suit could have been reinstituted. The statute of limitation requiring a suit to be instituted within one year after acceptance has run, and the defense cannot now be raised, particularly without any special plea." Without so characterizing it, but clearly indicating by his reasoning, the trial judge held that objection to the time of the bringing of the suit was in the nature of a plea in abatement and was neither timely made nor in accordance with the established practice. We think that this is so. While pleas in abatement are abolished, the practice in lieu thereof is firmly established. The objection came too late. It is not properly before us. *Commercial Credit Corp.* v. *Boyko,* 103 *N. J. L.* 620 (at *p.* 624); *Marine Trust Co.* v. *St. James Church,* 85 *Id.* 272; Supreme Court rules 56 and 58.

Chapter 142 of the laws of 1932 became effective on May 2d, 1932. This act amended the act of 1918 aforesaid. Among its several provisions section 3 is amended, in part, to read as follows: "Section 3, * * * And upon the trial of any such action the court shall award to the prevaiilng part a reasonable attorney's fee to be taxed as costs, and to be included in the judgment therein rendered." The contract between the parties was executed on September 23d, 1930, The surety executed the bond on the same day. The judgment, including this fee, was signed and entered March 9th, 1933.

Appellant resists liability for this fee by reasserting, in substance, the grounds urged by it in support of its claim of lack of liability on its part in the premises. Its contention, summarized, appears to be that the allowance of this fee, as part of the taxable costs, is an added obligation on its part; that it did not exist at the time it became surety; and that this particular provision of the statute is not merely procedural but that it is rather a matter of substance and thus impairs its contractual obligation in the premises.

That the allowance of such a fee, as part of the taxable costs, is in the nature of an added penalty cannot be seriously questioned. A like characterization may, be made of all taxable costs visited as a general rule on a defeated party. Notwithstanding these observations it would appear, on the surface, that appellant's grounds for resisting the inclusion of this fee as part of the taxable costs is not altogether without some weight. Authorities are not in accord. By the greater weight of these authorities, some of which we shall presently note, we are of the opinion that appellant's contentions are without substance.

In 12 *C. J.* 1084, § 777 (m), the law is stated as follows:

"Statutes regulating costs and fees affect generally the remedy only, and are therefore not unconstitutional as impairing the obligation of prior contracts. *This rule applies to statutes concerning attorney's fees."* (See cases cited thereunder).

And in 15 *C. J.* 23, § 7, it is further stated:

"Although there is some authority to the contrary, the right to costs and the amount and items taxable are as a general rule governed by the statute in force at the time of the termination of the action, and not by those in force at its commencement, as the question of costs is one which is solely of statutory regulation and wholly dependent upon it, and as 'alterations in the form of procedure are always retrospective, unless there is some good reason or other why they should not be.' A party has no vested right to costs at the commencement of an action. It is the determination of the suit which entitles one party to costs as against the other. It is competent for the legislature, at any time during the progress of a suit, to create an allowance for services not before provided for, and to increase or diminish or wholly abolish such allowance as existed at the time the suit was commenced. *The taxation of costs relates to procedure only.*" (See cases cited thereunder).

In *Lew* v. *Bray* (*Supreme Court of Errors of Connecticut*), 70 *Atl. Rep.* 628, it was held that the legislature has the power to enact laws relating to procedure which affected pending cases. The right to costs is created by statute and depends upon the statute in force at the termination of the action, and not those in force at its commencement.

In our own state, the author of the opinion for the Supreme Court, Mr. Justice Depue in the case of *Rader* v. *Southeasterly Road District of Township of Union, supra* (at *pp.* 282, 283), held:

"Nor is this conclusion changed by the circumstance that this action was pending when the repealing act was passed, and is abated by such repeal. The plaintiff, it is true, loses his costs. But the right to recover costs is no part of the remedy which inheres in the contract. That right is purely incidental, and depends upon the state of the law when the suit is determined. Any other construction would be highly unreasonable. If the right to costs in prosecuting a suit on the contract is made by constitutional enactment inherent in the contract as part of the remedy, it would follow that modifications in matter of costs, either as to the right to recover them

or the amount that should be recoverable, would be impracticable."

"If it is competent for the legislature, between the making of a contract and the institution of a suit, to pass acts reducing the costs that shall be recoverable, or denying costs altogether, a similar change in the law, pending the action, must be equally within legislative powers. The right to costs does not become vested until judgment is pronounced."

The holding aforesaid is not inconsistent with that expressed by Mr. Justice Case, for this court, in the case of *Textileather Corp.* v. *American Insurance Co.*, 110 *N. J. L.* 483. The allowance of the counsel fee in the instant case was made in pursuance of and in compliance with the terms of the statutes existing at the time judgment was signed and entered. See recent case of *Wiltsie* v. *Belenski*, 114 *N. J. Eq.* 1.

The order, rule and judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 16.

*For reversal*—None.